# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MELANIE LYNNE H.,[1]         )
                                   )
             **Plaintiff,**     )
                                   )     **CIVIL ACTION**
**v.**                               )
                                   )     **No. 20-1028-JWL**
ANDREW M. SAUL,         )
**Commissioner of Social Security,** )
                                   )
            **Defendant.**    )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits pursuant to sections 1602 and 1614 of the Social Security Act, 42 U.S.C. §§ 1381a and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) evaluation of Plaintiff's medical source's opinion, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.     Background

Plaintiff filed an application for SSI benefits on June 27, 2017.  (R. 10).  After exhausting administrative remedies before the Social Security Administration (SSA),

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in evaluating the medical opinion of Dr. Dickerson, her medical source.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record,

nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past

relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II.     Discussion

Plaintiff acknowledges that new rules for evaluating medical opinions are applicable in his case.  (Pl. Br. 8-9) (citing 20 C.F.R. § 416.920c(b & c) (2018).  Plaintiff argues, "Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion."  Id. at 9 (quoting Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotations and citations omitted)).  She continues, "The ALJ did not do so here, rendering his RFC determination unsupported by substantial evidence."  Id.  She argues the reasons the ALJ provided in finding Dr. Dickeron's medical opinion unpersuasive mistakenly allege that Dr. Dickerson described "an 'individual who is completely bedridden,'" but Dr. Dickerson specifically noted the limitations he opined apply only to workplace activity, "during a hypothetical 8-hour workday," and "in a competitive work environment on a sustained basis."  (Pl. Br. 10)

(quoting R. 454).  She argues, "neither Plaintiff nor Dr. Dickerson's opinion describe [sic] a bedridden individual."  Id.

Plaintiff argues that contrary to the ALJ's findings Dr. Dickerson supported the reaching limitations in his opinion, id. (citing R. 454 (scoliosis, degenerative disc disease, stenosis, and lumbar radiculopathy)), and the ALJ's finding "fails to consider the consistency of the other manipulative limitations with the record evidence."  Id. at 10-11 (citing R. 463,481, 525).  She argues, "An ALJ must provide reasons that are 'sufficiently specific to make clear to any subsequent reviewers' the weight given to an opinion, 'and the reasons for that weight,'" and it "is not sufficiently specific if he merely states an opinion is 'unsupported by' or 'inconsistent with the medical evidence' without further explanation."  Id. at 11 (quoting Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007)).

Plaintiff's final argument is that the ALJ's finding Dr. Dickerson's opinion "does not appear to be based on medical evidence," id. (quoting without attribution R. 18), erroneously assumed that the physician improperly lied to aid his patient, and the ALJ's finding was made without any legal or evidentiary basis to discount the opinion.  Id. at 11-12.

The Commissioner argues that the new regulations significantly change the way the SSA considers medical opinions for claims filed after March 27, 2017, including using the phrase "your medical source(s)" instead of "treating source" when referring to medical sources a claimant chooses to use.  (Comm'r Br. 7) (citing 20 C.F.R. § 416.920c (2017)).  He argues that "following notice and comment, the Commissioner chose not to

retain the 'treating source rule' that could require deference to treating source opinion evidence."  (Comm'r Br. 7-8) (citing 82 Fed. Reg. at 5,853).  He points out the new regulations explain that for "claims filed March 27, 2017, or later, the agency 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources.'"  Id. at 8 (quoting 20 C.F.R. § 416.920c(a) (2017)).  He points out the new regulations "no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (e.g., a requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion)."  Id.  In a footnote to his brief, the Commissioner quotes his explanation in promulgating the final rule that:

> Courts reviewing claims under our current rules [(for claims filed before March 27, 2017)] have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision.  As the Administrative Conference of the United States' (ACUS) Final Report explains, these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standards of review, which is intended to be [a] highly deferential standard to us.

Id. (quoting 82 Fed. Reg. at 5,853).

He points out that instead of applying the "treating source rule," the new regulations require the agency fact-finder to evaluating the persuasiveness of a medical source's opinions, to consider five factors when doing so, and to explain his consideration of the two most important factors—supportability and consistency.  Id. at 8-9.  The fact-finder may also explain his consideration of the remaining factors.  Id. at 9.

The Commissioner argues that Plaintiff based her allegations of error on cases applying the treating source rule and which are, therefore, inapposite to the case at hand. (Comm'r Br. 9-10).  He argues the ALJ properly explained how he considered the factors of supportability and consistency but was not required to explain his consideration of the other regulatory factors.  Id. at 10-11.  He then points to evidence which in his view supports the ALJ's supportability and consistency findings.  Id. at 11-14.

In doing so, he argues several points in opposition to Plaintiff's Brief.  He acknowledges that Dr. Dickerson's opinion was stated in terms of "an eight-hour workday, in a competitive work environment, on a sustained basis," id. at 11 (quoting Pl. Br. at 10) (emphasis omitted in Comm'r Br.), but argues "it was nevertheless reasonable for the ALJ to find the opinion that Plaintiff could not sit, stand, or walk any amount of time was unsupported by Plaintiff's self-reported ability to sit and stand, as well as her ability to continue working."  Id. at 12 (citing Newbold v. Colvin, 718 F.3d 1257, 1266 (10th Cir. 2013) (applying the treating source rule); and Pisciotta v. Astrue, 500 F.3d 1074, 1078-79 (10th Cir. 2007) (applying the treating source rule)).  He also argues the evidence supports the ALJ's finding that Dr. Dickerson's reaching limitations were unsupported.  Id. at 12-13.  He also argues the evidence supports the ALJ's consistency findings.

He concludes by arguing

it is irrelevant that some evidence in the record might have supported and been consistent with Dr. Dickerson's opinion.  The question before the Court [sic] was whether substantial evidence supports the ALJ's finding that Dr. Dickerson's opinion was unsupported by and inconsistent with other evidence in the record.

Id. at 15.

In her Reply Brief, Plaintiff argues that although the regulations have changed, "the underlying principles relating to the importance of a treating provider's opinion have not," especially since Plaintiff does not argue Dr. Dickerson's opinion should be accorded controlling weight.  (Reply 1).  She argues the Commissioner's assertion "that the ALJ could reasonably compare Plaintiff's ability to sit and stand with Dr. Dickerson's opinion," was not the reasoning relied upon by the ALJ and is, therefore "impermissible post hoc rationalization."  Id. at 1-2.

Plaintiff argues the ALJ's finding that

> Dr. Dickerson's opinion "simply does not appear to be based on the medical evidence, and it is not consistent with or supported by [Plaintiff's] medical records" … is not even remotely specific, and does nothing to disprove the detailed functional limitations opined by Dr. Dickerson.  The ALJ must give good reasons for the weight he ultimately assigns to the opinion of the treating physician.

Id. at 2 (quoting R. 18, citing Holland v. Barnhart, 333 F. Supp. 2d 1142, 1147 (D. Kan. 2004), and pointing out that Holland is a decision of this court).  Plaintiff argues, "Nothing in the new Regulations [sic] change the fact that the ALJ must articulate his rationale in some cognizable fashion," and despite the Commissioner's pointing to discussion elsewhere in the decision supporting the ALJ's finding, "there must be some causal link between the bare medical evidence and the opinion evidence."  Id.

## A.    The New Regulations

Effective March 27, 2017, the regulations changed the definition of "acceptable medical source" to add licensed audiologists for certain impairments, and licensed

Advanced Practice Registered Nurses and licensed Physician Assistants within their licensed scope of practice.  Compare 20 C.F.R. § 416.902 (2017), with 20 C.F.R. §§ 416.902, 416.913 (2016).  In the new regulations, the Commissioner found that certain evidence—including decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner—"is inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act, [and the SSA] will not provide any analysis about how we considered such evidence in our determination or decision."  20 C.F.R. § 416.920b(c) (2017).

In the new regulations, the Commissioner explicitly delineated five categories of evidence—objective medical evidence, medical opinion, other medical evidence, evidence from nonmedical sources, and prior administrative medical findings.  20 C.F.R. § 416.913 (2017).  The regulations define objective medical evidence as "medical signs, laboratory findings, or both."  20 C.F.R. § 416.913(a)(1) (2017).  "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."  20 C.F.R. § 416.913(a)(3) (2017).  "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim."  20 C.F.R. § 416.913(a)(4) (2017).

The regulation defines "medical opinion" and "prior administrative medical finding:"

(2) Medical opinion.  A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the abilities listed in paragraphs (a)(2)(i)(A) through (D) and (a)(2)(ii)(A) through (F) of this section. …

(i) Medical opinions in adult claims are about impairment-related limitations and restrictions in:

(A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

***

(5) Prior administrative medical finding.  A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, such as:

(i) The existence and severity of your impairment(s);

(ii) The existence and severity of your symptoms;

(iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;

***

(v) If you are an adult, your residual functional capacity;

10

(vi) Whether your impairment(s) meets the duration requirement; and

(vii) How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim.

20 C.F.R. § 416.913(a) (2017).

The regulations include a new section entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 416.920c (2017). The regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c(a) (2017). The regulation provides that the SSA will consider each medical source's opinions using five factors, supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 416.920c(a), (c)(1-5) (2017). It provides that the most important factors in evaluating persuasiveness are supportability and consistency. Id.

The regulation explains that the decision will articulate how persuasive the SSA finds all medical opinions and prior administrative medical findings. 20 C.F.R. § 419.920c(b) (2017). The articulation requirement applies for each source, but not for each opinion of that source separately. 20 C.F.R. § 416.920c(b)(1) (2017). It requires that the SSA

will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required

11

to, explain how we considered the factors in paragraphs (c)(3) through
(c)(5) of this section, as appropriate, when we articulate how we consider
medical opinions and prior administrative medical findings in your case
record.

20 C.F.R. § 416.920c(b)(2) (2017).  The regulation explains that when the decision-

maker finds two or more medical opinions or prior administrative medical findings are

equal in supportability and consistency "but are not exactly the same," the decision will

articulate the other most persuasive factors from paragraphs (c)(3) through (c)(5).  20

C.F.R. § 416.920c(b)(3) (2017).  Finally, the regulation explains that the SSA is not

required to articulate how it considered evidence from non-medical sources.  20 C.F.R.

§ 416.920c(d) (2017).

### B.    The ALJ's Findings Regarding Medical Opinions and Prior Administrative Medical Findings

The ALJ explained his evaluation of the medical opinions and prior administrative

medical findings and his summary of the evidence as follows:

As for medical opinion(s) and prior administrative medical finding(s), we
will not defer or give any specific evidentiary weight, including controlling
weight, to any prior administrative medical finding(s) or medical
opinion(s), including those from your medical sources.

An opinion was provided by John Dickerson, M.D., one of the claimant's
providers, in July 2017 (Exhibit 7E; Exhibit 8F [(R. 273-88, 453-55)]).
This opinion is completely unsupported by medical evidence.  Dr.
Dickerson claims that the claimant is completely unable to sit or stand for
any length of time; this describes an individual who is completely
bedridden (Exhibit 7E, p.1 [(R. 273)]).  There is zero support for such a
claim in the record, and even the claimant does not allege that she is
bedridden and unable to sit or stand.  Additionally, while the claimant does
credibly have some restrictions on use of the hands due to carpal tunnel
syndrome, there is no support for limited motion in the arms and nothing to
explain the alleged limitations reaching noted in this opinion.  Given such
issues, this opinion simply does not appear to be based on medical

12

evidence, and it is not consistent with or supported by the claimant's medical records.  Therefore, the undersigned notes it is not persuasive evidence in this case.

Opinions were provided by medical consultants on behalf of the State Disability Determination Service (Exhibits 1A, 4A [(R. 59-72, 76-90)]).  Under the new rules applicable to medical opinion evidence, these assessments are no longer evaluated as medical opinions, as determinations by governmental agencies are not inherently valuable or persuasive compared on [sic] the medical evidence.

After a thorough review of the evidence of record including the claimant's allegations and testimony, forms completed at the request of Social Security, the objective medical findings, medical opinions, treatment notes and other relevant evidence, the undersigned finds the claimant capable of performing work consistent with the residual functional capacity established in this decision.

(R. 18).

### C.    Analysis

Both parties acknowledged that new regulations were promulgated which affect the consideration of the medical opinions and prior administrative medical findings in this case, and the Commissioner's Brief provides a brief synopsis of those regulations.  However, each party presents a unilateral view of the new regulations without explaining, or perhaps even considering, the authority for and effect of changes in the regulatory framework for making decisions by an administrative agency and on judicial review of those decisions.  For example, Plaintiff asserts throughout her Brief that an ALJ must weigh a treating source opinion and must provide good reasons for the weight accorded, and in her Reply Brief asserts that although the regulations have changed, "the underlying principles relating to the importance of a treating provider's opinion have not."  (Reply 1) (citing 20 C.F.R. § 404.1527(d)(2) (a regulation relating affirmatively to "claims filed

before March 27, 2017")).  The Commissioner's Brief, on the other hand, asserts that under the new regulations the provider's relationship to the claimant is a factor the ALJ may consider but he is not required to consider it and he is not required to explain his consideration of that factor.  (Comm'r Br. 14).

The court expected that the parties' counsel, as officers of the court, would have briefed the issues presented here thoughtfully and carefully, with an eye to helping the court reach a reasoned and appropriate understanding of the changes and their effect on judicial review of the decision in this case.  Having taken a one-sided view of the regulations, counsel appear to have overreached in making their arguments.  The court will decide the issues presented beginning at the discussion in the ALJ's decision and based upon the new regulations and controlling case law which has not been changed or abrogated by the promulgation of the new regulations.  The court notes that Plaintiff does not allege error in the promulgation of the new regulations, so the court will apply the new regulations as promulgated and in light of principles of administrative law.

Plaintiff's argument in her brief that the ALJ must assign weight to a treating source opinion and must give good reasons for the weight assigned relies on case law applying the treating source rule from the former regulations.  Plaintiff's quotation from Watkins cited supra at 4, stops just before that court's citation of 20 C.F.R. § 404.1527(d)(2) (2003)—the then-current expression of the treating source rule.  350 F.3d at 1300.  Plaintiff's appeal to Oldham quoted supra at 5, is a quotation of the Oldham court's explanation of the treating source rule--"that the ALJ's decision be 'sufficiently specific to make clear to any subsequent reviewers the weight the

14

adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" 509 F.3d at 1258 (quoting Watkins, 350 F.3d at 1300, and citing 20 C.F.R. § 404.1527). As noted above, the new regulations provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c(a) (2017). In its final rule, the SSA explained the new rules "focus more on the content of medical opinions and less on weighing treating relationships against each other." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,854, 2017 WL 168819 (SSA Jan. 18, 2017) (emphases added). The agency explained it was clarifying how it used the terms "weigh" and "weight" and "also clarifying that adjudicators should focus on how persuasive they find medical opinions and prior administrative medical findings." Id. at 5,858; see also 20 C.F.R. § 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." "We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings.").

Therefore, under the new regulations it is inappropriate for an ALJ to speak of weighing, or of the weight accorded to, any medical opinion. Moreover, and consequently, it is inappropriate for a party to argue that the ALJ should have weighed the opinion in a certain manner or should have accorded greater (or lesser) weight to the opinion. And, cases applying the former regulations under the treating source rule— including cases decided by this court—are no longer good law to the extent they rely on

the treating source rule.  Social Security disability benefits are a creature of statute—the Social Security Act—and the Act provides authority for the SSA to promulgate regulations to carry out that statute.  Absent a violation of the Constitution or the Act—which Plaintiff does not allege or brief here—those regulations guide and control the court's judicial review.

The Commissioner's argument that the medical source's relationship with the claimant is a regulatory factor which the "ALJ may consider, [but] he is not required to consider it—and he is not required to explain his consideration of this factor," is equally a one-sided view of the new regulations.  (Comm'r Br. 14) (citing 20 C.F.R. § 416.920c(b)(2)).  The Commissioner's argument misses two notable portions of the regulation to which he cites.  Paragraph (a) of the regulation says, in part, "When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate."  20 C.F.R. § 416.920c(a) (emphases added).  Paragraph (c) stated, "Factors.  We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case."  20 C.F.R. § 416.920c(c) (emphasis added).  Although an ALJ may, but is not required to, explain how he considered the relationship factor, he is required to consider that factor, and all other regulatory factors, when evaluating how persuasive he finds a source's medical opinion or administrative finding of fact.  The evidence here is that the ALJ considered the relationship factor.  He specifically stated he, "considered the medical

16

opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c," and he found that Dr. Dickerson is "one of the claimant's providers."  (R. 15, 18).

The question remaining for the court, then, is whether substantial evidence supports the ALJ's finding Dr. Dickerson's medical opinions unpersuasive because they are "completely unsupported by medical evidence," because there is "no support for limited motion in the arms and nothing to explain the alleged limitations reaching noted in this opinion," and because it "does not appear to be based on medical evidence, and it is not consistent with or supported by the claimant's medical records."  Id. at 18.  To be sure, an agency is required to provide reasons for its decisions, Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Reyes v. Bowen, 845 F.2d 242, 244 (10th Cir. 1988)), but the SSA is no longer required to "give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion," Watkins, 350 F.3d at 1300, or "that the ALJs decision be 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  Oldham, 509 F.3d at 1258 (quoting Watkins, 350 F.3d at 1300).  The treating source rule is simply not applicable to cases filed with the agency after March 27, 2017.

The Commissioner explained he was revising the "rules to ensure that they reflect modern healthcare delivery."  82 Fed. Reg. 5,844-01, 5,844.  In response to comments on the treating source rule, the Commissioner also explained in his final rule:

Since we first adopted the current treating source rule in 1991, the healthcare delivery system has changed in significant ways that require us to revise our policies in order to reflect this reality. Many individuals receive health care from multiple medical sources, such as from coordinated and managed care organizations, instead of from one treating AMS [(acceptable medical source)]. These individuals less frequently develop a sustained relationship with one treating physician. Indeed, many of the medical sources from whom an individual may seek evaluation, examination, or treatment do not qualify to be "treating sources" as defined in current 404.1502 and 416.902 [(for cases filed before March 27, 2017)] because they are not AMSs. These final rules recognize these fundamental changes in healthcare delivery and revise our rules accordingly.

***

Furthermore, to reflect modern healthcare delivery, we will articulate in our determinations and decisions how we consider medical opinions from all of an individual's medical sources, not just those who may qualify as "treating sources" as we do under current 404.1527(c)(2) and 416.927(c)(2) [(for cases filed before March 27, 2017)].

Moreover, these final rules in 404.1520c(c)(3) and 416.920c(c)(3) retain the relationship between the medical source and the claimant as one of the factors we consider as we evaluate the persuasiveness of a medical opinion. These final rules also continue to allow an adjudicator to consider an individual's own medical source's medical opinion to be the most persuasive medical opinion if it is both supported by relevant objective medical evidence and the source's explanation, and is consistent with other evidence, as described in final 404.1520c and 416.920c.

82 Fed. Reg. 5,844-01, 5,853. Thus, contrary to Plaintiff's assertion in her Reply Brief, the underlying principles relating to the importance of a treating provider's opinion have changed pursuant to the new regulations, and Plaintiff has not shown error in the promulgation of those changes.

The court finds the ALJ's finding that Dr. Dickerson's medical opinions are "completely unsupported by medical evidence" is supported by the record. Both of Dr. Dickerson's opinions contained within the record are identical. (R. 273-74, 454-55).

And, as the ALJ found, there is simply no citation to or explanation of any medical evidence within the opinions to support the limitations contained therein.  The nearest to any discussion of medical evidence is Dr. Dickerson's list of Plaintiff's diagnoses, "Scoliosis, Degenerative Disc disease, Stenosis, Lumbar Radiculopathy" (R. 273, 454) and the diagnosis of an impairment does not imply particular limitations, especially disabling limitations.  While there may be medical evidence in the record which might be viewed in some manner to support portions of the opinion, the opinion contains no support by medical evidence and the court may not reweigh the evidence in some manner to find support which does not appear in the opinion.

> Plaintiff first alleges error in the ALJ's finding that,

> Dr. Dickerson claims that the claimant is completely unable to sit or stand for any length of time; this describes an individual who is completely bedridden (Exhibit 7E, p.1 [(R. 273)]).  There is zero support for such a claim in the record, and even the claimant does not allege that she is bedridden and unable to sit or stand.

(R. 18).  Plaintiff quibbles that Dr. Dickerson was referring to Plaintiff's ability to work competitively during an 8-hour workday and never said she was bedridden.  However, the form filled out by Dr. Dickerson asks the "total number of hours your patient can sit and stand/walk in an 8-hour workday," and Dr. Dickerson circled the number "0" for both sit and stand/walk.  (R. 273, 454).  If Dr. Dickerson believes Plaintiff cannot sit or stand/walk during an 8-hour workday, he did not explain what he believed she could do while occasionally (up to one-third of a workday) lifting ten pounds as he also opined. Id.  The ALJ did not say Dr. Dickerson opined that Plaintiff is bedridden, rather, he noted that an inability to sit along with an inability to stand/walk "describes an individual who

is completely bedridden." (R. 18).  This conclusion is certainly a reasonable one, and the court is at a loss to know what else it could describe.  As the Commissioner goes on to explain, the record evidence does not support the opinion Plaintiff can only sit or stand/walk "0" hours total in a workday.  Moreover, Plaintiff does not argue she cannot sit or stand/walk or is bedridden.  Plaintiff cites no record evidence supporting the opinion that she can sit or stand/walk "0" hours total in a workday, and she agrees that she did not allege she was bedridden.  There is no error in this finding.

Plaintiff next argues the ALJ erred in finding no support for reaching limitations since they "stem from Plaintiff's back impairments and carpal tunnel syndrome, as described by Dr. Dickerson in the opinion." (Pl. Br. 10) (citing R. 454 "scoliosis, degenerative disc disease, stenosis, and lumbar radiculopathy").  The ALJ found "nothing to explain the alleged limitations reaching noted in" the opinion (R. 18) and he is correct.  Dr. Dickerson opined Plaintiff is limited to reaching fifty percent of an eight-hour workday and, presumably, degenerative disc disease, stenosis, and/or carpal tunnel syndrome might cause a reaching limitation, but as the ALJ noted there is nothing to explain a limitation to reaching only fifty percent of the time.  Once again, as noted above, a diagnosis alone will not support a particular functional limitation.

Plaintiff also argues, "The ALJ also fails to explain why these disabling manipulative limitations were not consistent with the record, and focuses on one limitation to discount the entire set of limitations." (Pl. Br. 11).  This argument turns the burden of proof in a Social Security case on its head.  It is Plaintiff's burden to prove that she is unable to perform substantial gainful activity, and the burden to explain the

limitations he opines is on the physician.  As the ALJ found, Dr. Dickerson provided

disabling functional limitations but provided no explanation or citation to medical

findings demonstrating the severity of the limitations opined.  It is impossible to prove a

negative fact such as that the evidence does not support the opined disabling limitations,

and the Commissioner is not required to summarize each piece of medical evidence and

then state that it does not support Dr. Dickerson's opinion.  Moreover, the remaining

limitations which Plaintiff's argument suggests the ALJ ignored are no better explained

or supported by Dr. Dickerson, and where the evidence on its face demonstrates the

opinion is unsupported, there is no need to demonstrate error in every aspect of the

opinion.

Plaintiff's argument the ALJ's finding that Dr. Dickerson's "opinion simply does

not appear to be based on medical evidence" (R. 18) improperly implies that Dr.

Dickerson's opinion was merely "contrived or due to sympathy for Plaintiff" (Pl. Br. 11)

also fails.  Dr. Dickerson failed to explain or support his functional limitations based

upon findings in his or any other treatment records, the ALJ noted this failing, and the

court agrees.  In these circumstances, as the ALJ noted, Dr. Dickerson's "opinion simply

does not appear to be based on medical evidence."  (R. 18).  The ALJ noted this failing in

the opinion but did not suggest or imply a reason for it.  This is not error.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the

fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated October 23, 2020, at Kansas City, Kansas.


s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**